All rise. The judges of the United States Court of Appeals. Hear ye, hear ye. The United States Court of Appeals for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States and this honorable court. Please be seated. Before we start, just a couple housekeeping matters. First, we want to thank Belmont Law School for hosting us. It's very kind of them to host us. We will take a quick break between after two cases and before the next two. So after Rodriguez and Jones, we will take a quick break and then we will start the next two and you can call the first case. Case numbers 20-21-84, 20-22-47, and 20-22-53. Catherine Rodriguez versus Hirschberg Acceptance Corporation et al. Oral argument not to exceed 15 minutes per side. Mr. Warner, you may proceed for the appellant. Good morning. May it please the court. This case is unique in that it presents a jurisdictional issue that doesn't seem to have appeared before this circuit before. Two district court judges have indicated that the June 25, 2020, denial of the motion to reopen a case that was administratively closed in order for this court to rule upon a case in Vander Cody was a final order. However, upon further review, it does not this case in Rodriguez one that there actually is a final order. This brings up a discussion that is similar to Schrodinger's cat in quantum mechanics, where a cat can be neither dead nor alive depending upon a random event of a subatomic particle. The case law is that a case that has been administratively closed is more abundant, which in Schrodinger's cat would be just placing the cat into the box. There needs to be some other event for when the box is opened for the cat to either be dead or alive. So there was a deadline for you to bring to life that other event, to file notice of the Sixth Circuit decision, and you didn't do that for a couple of months. That would be correct. That is correct. You missed the deadline by two months. Under the district court's interpretation that it had to be 14 days after the ruling in Vander Cody, yes. Under our erroneous position that it was after certiorari, the answer then would be no. That it was filed timely. There was even an embark petition that wasn't decided by this court until April 1st. But that still doesn't kill the cat in that there has to be some sort of subatomic event. There has to be something else. Rule 6b alone cannot end a case. There has to be, for example, a ruling like under 4m, which was cited by the district court in the city of Taylor, which does then allow the plaintiff to just go then and refile the case. Plaintiff had argued that if the hypothetical cat was to be killed, it should have been done under Rule 41b if indeed it wasn't timely and those were the factors that needed to be considered by the district court. Could you help us map out what relief you'd like? You'd like this case remanded back to the district court and the district court would then perform the Rule 41 analysis? So well, first of all, the court has to determine whether or not there is jurisdiction to actually hear this appeal. Our position is that the court can just find that in Hirshberg 1 there is no jurisdiction. Alternatively, the court should not be, which would actually then reserve, would resolve Hirshberg 2, which was decided on the basis of res judicata. So the relief is twofold, is the just simply can't and shouldn't do anything here. How does that advance your case positively or negatively back in the district court? Well, what do you do next if we just simply say, if we follow your advice and say no jurisdiction, what happens next? Well, that resolves the issue in Hirshberg 2 that was pinned on collateral or res judicata. If the court doesn't have Hirshberg 2, which then. So then you abandon Hirshberg 1 essentially because and you hang your hat on Hirshberg 2? It's the same case, Judge McKeague. It's the exact same case. Justice Alito says you can refile it. It's the same principle as if like a deadline is missed under 4M in which the defendants aren't served on time. You simply then can just go file the case. If we reverse and remand the first case, does that also take care of the second case? In other words, doesn't that undo the order that's arguably preclusive in the district court for the second case? Correct. If you reverse and remand it to have the district court in Hirshberg 1 do an analysis under Rule 41B, that also does resolve Hirshberg 2 because then there would be an issue of res judicata and then the district court can figure out which, you know, the timing system because it's now between two different judges. But if I understand what you're saying then, so if we find no jurisdiction, then nothing happens one way or the other in Hirshberg 1. It just sits there either dismissed or not dismissed. Who knows? And you rely upon Hirshberg 2. Is that your position? That would be the position. It'd be as the box, the cat in Schrodinger's cat is still alive in Hirshberg 1. It's just more abundant. It sits there. But yet because there was another case, that case can then continue because this court now has opened that box and found the cat to be alive that the event never occurred that killed the cat in the first case. It does bring a very... This has got to be one of the worst analogies I've ever heard. Well, in prepping for this, the people who I talked to, you know, like the quantum physics argument and that it does it because it all deals whether a case is dead or alive. And then what do you do with it? And I mean, in simple terms, there's got to be another rule. There's got to be a 12B6, a Rule 56 motion or 41B if there was an untimely filing. So what happens if we do have we remand for the 41B analysis is your argument? That's what we would request. That should be done. That should have been the proper analysis, not just to keep the case closed administratively. Yes, Justice DeParle, that would be the correct analysis is to remand that. And the resolution of that case does also resolve that there's not a final order in Hirshberg 2. And really, I don't know why those cases... It did go back once it was removed from state court Hirshberg 2 to the same judge. And then under an administrative order because of the new judge being appointed, the court then split it to two different courts. So there are two ways that the court can resolve this issue. One is to find that the court lapsed jurisdiction Hirshberg 1 because there was no merger issue here too with the original administrative order, because there's just no case law. The cases that have been cited by the defendant are those cases where the court hangs on to jurisdiction for a limited time under Kekkonen to allow the parties to effectuate the terms of the settlement agreement. And then they can either dismiss it or come back and seek relief of the court if no settlement had really been entered into. I reserve the... If there's no further questions, I'll reserve the remainder of my seven minutes for rebuttal. Okay. Thank you, counsel. Thank you. Good morning. Kate Klaus on behalf of the appellee. The one thing counsel and I agree on is that this is an unusual case because it's unusual that an appellant would argue that the it clearly makes no sense. But this case is not as... What's your position on the issue? Well, there's... You're sort of mixed. You have mixed views on it? Well, it depends on... It's sort of odd for you to argue we do have jurisdiction. Well, we argue that the court doesn't have jurisdiction because the appeal wasn't timely filed. That's a rule, appellate rule four argument. We never argued and don't believe that the court lacks jurisdiction because the order of the in Hirshberg 1 wasn't final. Under 1291, it was final. It was the last thing that court could... There was nothing left for that court to have done. It's a real world test. What was Judge Neff going to do once she decided not to reopen the case? There was nothing left for her to do. Is there any case law that says an administrative ruling can turn into final judgment simply by missing an appellant, missing the deadline? Yes. What case is that? We cited the cases in our brief. Well, what's your best case for that? Because you talk about the 10th Circuit case, but in that case there was an entry of dismissal. Right. Layman suggests it when it says that without a built-in timetable, the case can be reopened. We read that to stand for when there is a built-in timetable as there was here. But you don't have a case directly on point. You cite all these cases in your brief. I couldn't find one that stands for the proposition you're arguing. Candidly, Your Honor, most of the cases where there's a built-in timetable, it says, and if this timetable isn't met, the dismissal will be with prejudice. The court here did not dismiss the case. She closed it, which is a little different. In the typical settlement cases, they say the case is to replead, and if it's not repled, it will be dismissed with prejudice. That's because under Kokanen, you have to retain jurisdiction to have an ability to finalize the settlement if it occurs. But this is a little different, right? This is a very bizarre posture that we find it in. If we all fall and you're back to square one in the district court. No, because even if the initial order didn't mature to a final order, when Judge Neff ruled in October of 2020 that it was a final order, that made it final, right? She's entitled to decide whether she wants to continue to litigate that case in front of her, and she clearly said no. So that would make the appeal timely and dispose of our argument that there's no jurisdiction because the appeal wasn't timely filed. Is it a final decision on the merits for res judicata purposes? It can be on the merits. The court has the right to dismiss a case, and we did cite cases in our brief, the Bausch case of this court in a U.S. Supreme Court, that a court can dismiss a case when someone fails to follow its orders, and there's no doubt here. I'm sorry. Well, you also didn't follow the order, right? You didn't call the Sixth Circuit's attention case to the court's attention, right? Right. We didn't have to. It said either party may. Right. Either party may. It didn't say, you know, the defendant must. I know, but by not doing that, you're now claiming potentially victory in the case by neither of you doing something that was optional. Let me ask you this. Where does an administrative closure order come from? Where is that in the federal rules? It's not in the federal rules, but it's certainly recognized as a practice. By who? By the layman case, by the Tenth Circuit, by the Third Circuit, by the First Circuit. It's sort of a made-up creature. It is. You want this made-up creature to have the full force and effect of the actually written rules in the federal rules of civil procedure. It's a little odd. It is odd, but it is a recognized procedure. And again— What is the point of the procedure? To clear the court's docket so it doesn't have, you know, hundreds of open cases when there's nothing for the court to do. What does that achieve? I mean, those cases aren't actually being closed, so you're clearing the docket, but what does that mean? Well, it's— Just moving them from one room to another? I honestly think it comes from case assignments. You know, judges can only have a—or they try to distribute the cases so that district courts have the same number of open matters. And this matter isn't open because the judge isn't litigating it. It's like a shell game. You put it on this shell, we don't have it, then you move it around. I mean, I don't— Sure, we're— It's not making sense to me why judges would do this. I'm really not understanding why judges would— The Civil Justice Act requires nine-month reports of cases that are open more than three years, motion spending more than X years. You administratively close the case, you don't have to report it. That's the answer. Okay. And it wasn't a decision— So it's odd, if I'm right about that, going back to where Judge Rageler was coming from, it seems odd that administratively closing a case then is going to end up with the consequences that happened here, given why you administratively close a case. Right. And I think it was properly closed. I mean, it shouldn't stay open waiting years. You agree with Judge McKee's premise, right? Start with his premise. His premise is they close it because of what is affectionately called by district judges the Biden report. Okay. Which is six months, three years. Right. Administratively closed. Why should we give that any preclusive effect? I mean, in effect, all they're doing is protecting themselves from reporting. Right. We're not asking that you give it— you give the administrative closure order preclusive effect. We're asking that you give Judge Neff's decision not to reopen the case because counsel didn't move timely preclusive effect. Even below, you point to Rule 41B as the proper inquiry, but now you say it's a red herring. How can 41B be a red herring? Because it has two sentences, Your Honor. The first sentence of Rule 41B deals with the failure to prosecute. The second— But isn't that what you're arguing this was, is a failure to prosecute by failing to bring the district court attention of the case? No. What we argued was that it was a Rule 6 decision. He had two weeks to move to reopen the case, and he didn't. But where does Rule 6 give the district court the ability to dismiss for lack of prosecution? Well, the judge has the inherent order. It's not for lack of prosecution. It's for failure to follow her orders. And a judge has the inherent authority to dismiss a case for the failure to follow her orders. And here she said, if you want this case reopened, you have 14 days after Vanner Cody to do it. Counsel admitted that he knew of the Vanner Cody decision at or about that time. He didn't move to reopen because, number one, he didn't read the order in 2018, and he didn't read it again in 2020 when Vanner Cody was decided. And typically in this—if it was a Rule 41 analysis, would we consider the prejudice to your client by—if the dismissal is appropriate because your client was prejudiced by the delay? It's a decision in both—or it's a factor in both Rule 41 and Rule 6, but it's— What was the prejudice to your client? That the case was sitting closed already for two years, and then we actually closed the case. Well, what's the two years beforehand? A few extra months. The few extra months was the tipping point. There's two years for the Sixth Circuit to issue its decision. Right. But then the next few months, that was really the prejudicial tipping point? We found it to be prejudicial. Why? Why? Because there was already extraordinary delay due to nobody's fault, and then— Okay, due to nobody's fault, right. Right. And then the extra time. But prejudice isn't— I'm not sure how you can blame the plaintiff for the two-year delay. And if you're not blaming them for the two-year delay, then all we're talking about is 14 days versus a few months. So what happened in those couple of months that was so critical that it was prejudiced? It wasn't just positively prejudiced, and we're not arguing that. But any kind of delay or extra delay, especially after a two-year delay, is prejudicial. But prejudice isn't the only factor to consider under either Rule 41 or Rule 6. There are other factors to consider, including the judge's ability to control her own docket, which is entitled to deference. And that was the basis for her decision. And the second sentence of Rule 41 makes it clear that a dismissal for any reason that's not voluntary is an involuntary dismissal and a dismissal of prejudice. And when the judge didn't— It wasn't dismissed under Rule 41. Rule 41 sort of suggests a dismissal for any reason. If you read it, it says— But you agree, she never referenced Rule 41. No, she didn't. It wasn't a Rule 41 dismissal for want of prosecution. And I don't know why they did this, but the second sentence of Rule 41 indicates that— You're talking about 41B? Correct. Rule 41B, any dismissal not under this rule, meaning Rule 41, except one for lack of jurisdiction and proper venue or failure to join, operates as an adjudication on the merits. And when the court denied, in June of 2020, the motion to reopen, what did that mean? It had to mean that the case was dismissed. And counsel recognized that because he refiled the case. It was only a question of whether that dismissal, which is what the parties clearly understood happened in June, was with prejudice or without. We argued with prejudice under the second sentence of Rule 41. Counsel argues both that it was still in the district court and that he could refile it. The parties clearly understood what the judge intended when she denied the motion to reopen. And that was that the case was dismissed. I mean, the reason we have rules that require a judgment is so that parties don't have to guess at what a district court intends. We know expressly what it intends and when to decide that and everything flows from there. And this was not that case. Right. But the rules also provide that if there's any ambiguity, you move to reconsider. You move for clarification. You don't just refile a case. Because we didn't find it confusing, Your Honor, respectfully. We just didn't. We understand. I think we find it confusing. It could be because we practice in the Western District of Michigan, so we didn't find anything unusual about this at all. It's routine by all judges in the Western District of Michigan to use the administrative closure rule to avoid the Biden list? Yes. And it's in the Eastern District of Michigan. It's quite an indictment by the entire district. When I clerked in the Northern District of Illinois going on 30 years ago, we did that. You know, we cleared our docket and used administrative orders to remove inactive cases from the docket. Is your own opinion blessing this practice? No, recognizing this practice. By recognizing it and not saying it was an abuse of discretion, aren't we blessing it? The abuse of discretion doesn't come under the administrative closure. It comes under Rule 6. And, you know, Rule 6 is a court rule that authorizes Judge Neff to decide— Administrative closure was the basis for the Rule 6. I mean, they're tied to the HIP. Yeah, with the time period in it. For example, in a bankruptcy case, they do that. The case is stayed or administratively closed. You have a certain amount of time after the bankruptcy court is decided. The other cases deal with remands to ERISA fiduciaries. You have a certain amount of time after that decision is made to bring this case back. It's a very common occurrence. And the fact that it was administratively closed, again, with 14 days to replead, there was certainly notice to counsel he had 14 days. There's no underlying due process issues here. But you're asking that it be dismissed with prejudice when I'm still stuck on Judge Radler's older question about what's the prejudice to you. And the best prejudice to you is just that otherwise you have to litigate this case again. That's really the prejudice. That's indeed. But that would have been true if he did it in seven days or three months. Or two years. Well, two years. You've got to set the two years aside because two years is our rule. It had nothing to do with him or what he was doing. I agree. I agree. We're not saying that we set our file on fire and we're not able to defend the case. We're not arguing that level of prejudice. But we are entitled as defendants. When we look at things from delay, we look at loss of witnesses. We look at all those types of things. None of that. No, we didn't argue that. But that's not the only consideration on whether or not Judge Neff abused her discretion under her inherent discretion or discretion under Rule 6. You have to also look at the plaintiff's conduct. If you've been prejudiced, why don't we remand this case? You have jurisdiction, remand it. And then you can move for dismissal under Rule 41 and explain your prejudice to Judge Neff. And then she can decide that issue. Well, we've argued all of that on the Rule 6. It would be relitigating something she's already relitigated, which is. As she laid out. Because I didn't see it. Rule 6 to me does not. It's Rule 41. I mean, this is back to Judge Raebler's point. There's rules in place for a reason. There's a way we do things for a reason. It makes it easier on everyone in the long run. Rule 6 says nothing about dismissal for failure to prosecute, which is in essence what you're arguing. That specifically falls under Rule 41. Respectfully, Your Honor, we're not arguing dismissal for failure to prosecute. We're arguing that the closed case should not have been reopened because counsel didn't follow the order. The conditions for reopening that case. So instead of using 41, you're arguing that we should use inherent authority. Yes. Yeah. And Judge Neff clearly has the right to control her own docket. And length of time isn't the only factor. But she found that the length of time was extraordinary in the case. And that decision is entitled to deference. She found the reasons for not moving timely to reopen the case were relevant. She found the lack of good faith was relevant. I mean, I'll be honest with you. I have a problem because it sounds to me like we have judges that don't want things on the Biden list. So they administratively close them. Then when someone wants to reopen, they're immediately going to go on the three-year list through no fault of the district courts. It's a problem with the list. But there's an incentive not to reopen them. I don't find that here. I find, honestly, she was a little perturbed at the reasons for not moving timely. Not reading a court order is inherently inexcusable. And there were two incidents here where that could have taken place. And it wasn't. Your time's up. Do you want to wrap up in a sentence? No. We believe just that Judge Neff's decision, she is entitled to manage her own docket. She did so in this case. And her reasons for doing so were not abuse of her discretion. OK. Thank you. Judge McKeague, you had a question about the origins of whether or not there is any inherent power to administratively close a case. In a civil case, there doesn't seem to be any one. There's a 1936 case, I believe it's around that, that my memory has slipped, that specifically found that the courts have the inherent power to stay a case. And in this case, the party stipulated to stay under that inherent power to give way to this court to decide the dispositive issue in Vandercote. If this court ruled in the defendant's favor that the issue was precluded by Rooker-Feldman, then the case would be over. However, we continued. And courts do trim their docket to stay to give ways for these things or for certain administrative acts to be done beforehand. They just don't have the authority just to get rid of the case by administratively closing it. It does cause problems. From a practitioner's standpoint, a judge would possibly order or the parties would say, look, we'll do a status report in 90 days, your honor. All the motions would be then stayed or to refile them later once there was a dispositive ruling by a higher court, which was the reason for the parties to stay, which was here. Judge Riedler, as far as prejudice to the defendant's question, this case also has been litigated with the state court claims to which the district court didn't exercise supplemental jurisdiction over. The Supreme Court of Michigan has taken briefing of Amicus and is going to schedule oral arguments on the petition of whether or not a Michigan court rule 3.205 allows or disallows class actions when a statutory penalty is involved. And Judge Tappar, you're absolutely right. In order to end this case, it has to be rule 41B. I'm sorry, I didn't understand the jump from prejudice to the Supreme Court. Oh, I'm sorry. So there couldn't be any prejudice to the defendant here because the state court claims were still viable. Those were immediately thrown out by the district court judge at the first Rule 16 conference, indicating that the district court wasn't going to exercise supplemental jurisdiction over them. We then refiled those. They got brought back to Hirshberg 2. The judge in Hirshberg 2 did the same thing. Then exercised supplemental jurisdiction. And now there's a question of first impression about Michigan's class action rule that the Michigan Supreme Court has taken up. So we're still litigating this case. Do you have any state claims that may or may not be valid based upon whatever the Michigan Supreme Court says? No, it's a procedural rule whether we can bring it as a class action. Okay, so the profitability of the case, I suppose, or the potential exposure of the case is going to be determined by the Supreme Court. As to the state law claims only, which are... So what happens, so if we remand this case back to the district court, the district court has a Rule 41 analysis. I typically think of them as looking at the prejudice to the party who the delay worked against, and that would not be you, it would be your friend on the other side. But if that court then dismisses the case on Rule 41 grounds, what happens to your state law claims? Those are still good because those were thrown out or declined supplemental jurisdiction, Obram, in the Rule 16 conference before the court administratively closed. Did you refile those? Are those the claims that were refiled in the Hirshberg 2? Correct, along with the same federal claim. And so it was then removed by the defendant under the federal claim. So procedure nightmare. But if the district court would dismiss this case on Rule 41 grounds, is that a binding order that then precludes your second case? No, because those are state law claims. They were never involved in the administrative closure. Those claims were already gone. And they were timely filed. There's no limitations motion in the second case. Correct. There is no limitations in the second case. There's a six-year statute of limitations in Michigan under their Mirror Collection Practices Act. But I guess we are in the right place to discuss federal jurisdiction civil procedure nightmares. We are in a law school. We have an esteemed judge who was a professor of federal jurisdiction on the bench. So I think this is a case worthy of the court's time and to make a determination whether or not. You would have saved us this whole problem by just notifying the court within two weeks of our decision. Unfortunately, yes. That would have solved the issue. And I apologize. And I did a mea culpa with the court. The issues with COVID, of bringing my parents up from Florida, of misreading it, of confusing it with another case. Beginning of COVID was a trying time for everybody. And I did do a mea culpa. But the judge followed and adopted the defendant's Rule 6 arguments in Holt. Defendant, before Hertzberg won, district court never even talked about Rule 41B. It was just under the lower, the higher threshold to reach under 6B. Rule 41B is a lower threshold. There's also a local rule that required the court, if they were going to dismiss the case with prejudice under Rule 41B, to do a show cause, a shot across the bow, to give the parties time. Hey, look, what's going on? Are you not prosecuting this? And, you know, if that was done, if it was stayed and that we originally stipulated to, and if the court would have put like a timekeeper in that took a calendar about every 90 days, that would have resolved these issues. So this is one of those unfortunate cases that, yes, there were mistakes made. We set forth the mistakes in the briefs before the court. We apologized. And then the case turned the way it did on these procedural issues. If there are no other questions, I thank the court for their time. Thank you, counsel. And that the case should be either reversed and remanded on jurisdictional issues or on the merits. Thank you. Thank you, counsel. The case will be submitted.